UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA L. VALENCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:11-cv-01970 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF ANA VALENCIA |

Ana Valencia ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical records and assessing her residual functional capacity. Therefore, Plaintiff seeks judicial review of the administrative decision denying benefits. For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 30, 2008, alleging disability beginning October 20, 2003. (Doc. 13-3 at 23). The Social Security Administration denied her claims initially and upon reconsideration. *Id*. After requesting a hearing, Plaintiff testified before an ALJ on July 6, 2010. *Id*. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on October 20, 2010. *Id*. at 23-32.

Plaintiff requested a review by the Appeals Council of Social Security, which denied review of the ALJ's decision on November 17, 2011. (Doc. 13-3 at 2-7). The Appeals Council noted an earlier determination stood "as the final decision of the Commissioner of Social Security for the period of February 2, 2004 through July 9, 2008." *Id.* at 2. Accordingly, the Appeals Council considered only the period beginning July 10, 2008. *Id.* at 2-3. However, the Appeals Council found no reason to review the decision, and the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial[1] and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.   Relevant Medical Evidence**

Dr. Cesar Duclair performed an orthopedic consultative examination on June 14, 2008.  (Doc. 13-8 at 3-4).  Dr. Duclair noted Plaintiff complained of "[p]ain all over her body, neck pain, numbness and tingling in the upper extremities, lower back pain, [and] numbness and tingling in the lower extremities."  *Id.* at 3.  Plaintiff reported she had "difficulty doing any appreciable work inside or outside of the home," as well as "difficulty cooking, cleaning, doing laundry, or walking more than a city block."  *Id.*  Dr. Duclair reported he reviewed medical records including "a very long QME from a Dr. Markinson dated 5/4/07."  *Id.*  According to Dr. Duclair, the report of Dr. Markinson "listed a nerve conduction study of the upper extremities done on 12/16/03 which reveals a very mild median nerve neuropathy across the left wrist, carpal tunnel syndrome."  *Id.*

---

[1] Testimonial evidence by Plaintiff and the vocational expert is not summarized below.  Plaintiff does not challenge the ALJ's findings concerning her credibility so her hearing testimony is not summarized.  In addition, Plaintiff withdrew the issue related to the vocational expert's testimony because the Court may not rely on data not presented to the ALJ or Appeals Council.  (Doc. 21 at 7) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

Dr. Duclair tested Plaintiff's range of motion, and found her wrists, fingers, and thumbs had "normal" ranges. (Doc. 13-8 at 4). Plaintiff demonstrated "poor participation" on her motor strength test, but Dr. Duclair determined Plaintiff's strength was "5/5 in all muscle groups." *Id.* Likewise, her grip strength was "5/5." *Id.* Based upon his examination, Dr. Duclair opined Plaintiff had the ability "to lift and carry 20 pounds on a frequent basis and 35 pounds on an occasional basis." *Id.* at 4. Dr. Duclair explained the number of hours Plaintiff could be expected to stand, walk, or sit in an eight-hour day was "not restricted," and she had no postural or manipulative limitations. *Id.*

Dr. Birgit Siekerkotte performed a comprehensive internal medicine evaluation on December 14, 2008. (Doc. 13-8 at 18-22). Dr. Siekerkotte noted Plaintiff complained of bilateral carpal tunnel syndrome, "though there has been some dispute about whether it is bilateral or not." *Id.* at 18. Plaintiff's motor strength was "good, 4/5 bilaterally." *Id.* at 21. Based upon her examination, Dr. Siekerkotte offered the following functional assessment:

> Maximum standing and walking capacity: Up to four hours based on decreased range of motion of the hips and positive pain with straight leg raising.
>
> Maximum sitting capacity: No limitations.
>
> Assistive device: None used or needed.
>
> Maximum lifting and carrying capacity: 10 pounds occasionally and frequently based on decreased upper extremity strength.
>
> Postural limitations: Climbing, balancing, stooping, kneeling, crouching, and crawling should be limited to occasionally based on decreased range of motion of the lower extremities, as well as decreased grip strength.
>
> Manipulative limitations: Reaching, handling, fingering, and feeling should be able to be done frequently as long as no heavy lifting is involved.

*Id.* at 21. According to Dr. Siekerkotte, these limitations would be applicable for twelve months following the examination. *Id.*

Plaintiff's treating physician, Dr. Theodore Schwartz, completed a medical source statement regard the nature and severity of Plaintiff's physical impairments on December 15, 2008. (Doc. 13-8 at 23-25). He opined Plaintiff had a "fair to poor" prognosis based upon the following diagnoses: cervicobrachial syndrome, lateral epicondylitis, medial epicondylitis, and carpal tunnel syndrome. *Id.* at 23. Dr. Schwartz noted Plaintiff's symptoms included "numbness in both hands & fingers" as well

as "severe pain" in her neck, left shoulder blade, left axilla and both elbows. *Id.* Dr. Schwartz estimated Plaintiff's level of pain and fatigue to be 7-10, where "0" equaled "none" and "10" equaled "severe." *Id.* According to Dr. Schwartz, Plaintiff had the ability to sit, stand, or walk up to two hours in an eight-hour day. *Id.* at 24. He opined Plaintiff had limitations "in doing repetitive reaching, handling, fingering, or lifting," and she was unable to lift and carry less than ten pounds. *Id.* Further, Dr. Schwartz believed Plaintiff was incapable of low stress because her "chronic pain conditions . . . lead[] to depression." *Id.* at 25. Dr. Schwartz concluded Plaintiff was unable to perform work on a sustained basis, and had been unable to do so since February 17, 2004. *Id.* at 25-26.

On December 26, 2008, Dr. Brian Ginsburg reviewed the record and completed a physical residual functional capacity assessment. (Doc. 13-8 at 27-35). Dr. Ginsburg found Plaintiff had the ability to lift and/or carry ten pounds frequently and twenty pounds occasionally, to stand and/or walk with normal breaks for a total of about six hours in an eight-hour day, and to sit about six hours in an eight-hour day. *Id.* at 28. He determined Plaintiff's ability to push or pull was unlimited, although she had limitations with handling (gross manipulation) and fingering (fine manipulation). *Id.* at 28-29. Dr. Ginsburg opined Plaintiff did not have postural, visual, communicative, or environmental limitations. *Id.* at 28-30. According to Dr. Ginsburg, Plaintiff demonstrated a "lack of credibility" given "the discrepancy between the sitting [and] supine measurements which should be the same," and she did not fully participate in the consultative examination. *Id.* at 34-35. He concluded "a Light RFC [with] frequent basic light gross handling [and] frequent fine fingering is quite appropriate." *Id.* at 35.

Upon referral from Dr. Schwartz, Dr. Clyde Burch performed a psychological pain management evaluation on January 15, 2009. (Doc. 13-8 at 36-40). On a scale of 0 to 10 "with a pain level of 3 judged to be tolerable," Plaintiff reported her arm, neck, and shoulder pain were "a 10 most of the time;" her mid-back pain was "a 6 most of the time;" leg pain was "a 9 most of the time;" headaches were "a 5;" stomach pain was "an 8 most of the time;" and chest pain was "a 2 most of the time." *Id.* at 37. He observed Plaintiff "was very tearful," but displayed "no obvious evidence of impairment in memory, attention." *Id.* Dr. Burch concluded Plaintiff was "debilitated both physically and emotionally/psychologically, consistent with a chronic pain behavior syndrome (i.e. pain disorder associated with both psychological factors and medical condition), including severe and worsening

symptoms of depression, anxiety and sleep disturbance." *Id.* at 39.  He explained Plaintiff's pain, depression, and anxiety were "extremely high," and gave her a GAF score of 50.[2] *Id.* at 38-39.

Dr. Manolito Castillo completed a psychiatric consultative examination on January 18, 2009. (Doc. 13-8 at 41-43).  Plaintiff reported she was felt "as if everything [was] spiraling down," and she experienced anxiety attacks that occurred "suddenly with no known triggers." *Id.* at 41.  In addition, Plaintiff told Dr. Castillo she had no energy, and her "concentration and memory [were] also poor." *Id.*  Upon examination, Dr. Castillo noted: "The claimant's attention span was normal.  The claimant was not easily distracted and needed no structure from this evaluator during the evaluation. …The claimant's memory was intact as she was able to recall three unrelated objects immediately and five minutes later." *Id.* at 42.  According to Dr. Castillo, Plaintiff did not have any limitations with her ability to understand instructions or to complete simple tasks, but she had "moderate" limitations with her ability to complete detailed or complex tasks.  *Id.* at 43.  Further, he determined Plaintiff was not limited in her ability to socially interact with others or to sustain an ordinary routine without supervision.  *Id.*  Dr. Castillo gave Plaintiff a GAF score of 65.[3] *Id.*

On March 3, 2009, Dr. Middleton completed a psychiatric review technique form and mental residual functional capacity assessment.  (Doc. 13-8 at 45-58).  Dr. Middleton opined Plaintiff suffered from somatoform disorder, a dysthymic disorder, a panic disorder without agoraphobia, and a pain disorder with psychological symptoms.  *Id.* at 45, 47-50.  According to Dr. Middleton, Plaintiff had moderate limitations with her activities of daily living and maintaining social function.  *Id.* at 53.  Dr. Middleton explained this assessment was consistent with the examinations by Dr. Burch and Dr. Castillo because Plaintiff was "mildly limited [with] tearful affect and mood," but her memory was intact and her intention span was normal.  *Id.* at 55.  Further, Dr. Middleton opined Plaintiff was "not

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

[3] A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

significantly limited" in all identified aspects of social interaction and adaptation, as well as her ability to remember locations and work-life procedures; understand, remember, and carry out short and simple instructions; and maintain attention and concentration for extended periods. *Id.* at 56-57. Therefore, Dr. Middleton concluded Plaintiff was "[a]ble to understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions." *Id.* at 58.

Upon the referral of Dr. Schwartz and Plaintiff's counsel, Dr. Ravi Panjabi conducted a pain management consultation on April 29, 2009. (Doc. 13-11 at 2). Dr. Panjabi noted he reviewed medical records from Dr. Schwartz as well as "[a]n agreed medical evaluation by Robert Markison, MD dated May 4, 2007." *Id.* at 4. Dr. Panjabi noted Dr. Markison found Plaintiff was "permanent and stationary, but [did] not seem to have addressed her back condition." *Id.* According to Dr. Panjabi, Plaintiff's range of motion was "restricted to 50% of normal" in her cervical spine and "75% of normal" in her lumbar spine. *Id.* He observed Plaintiff was able to stand and walk on her heel and toes, but did so "with difficulty." *Id.* In addition, Dr. Panjabi found Plaintiff's strength was "5/5" in her legs. *Id.*

Dr. Burch provided a psychological pain management progress report on May 8, 2009. (Doc. 13-9 at 16-18). Dr. Burch noted Plaintiff "participated in five sessions of cognitive-behavioral psychotherapy." *Id.* at 16. According to Dr. Burch, Plaintiff "continue[d] to have serious difficulties setting and focusing upon even short-term functional goals, as her mood disturbance remain[ed] severe." *Id.* at 17. He explained Plaintiff was "extremely high strung, agitated, restless and labile, with a high level of impatience and difficulty tolerating her physical symptoms and any other stressors." *Id.* Dr. Burch diagnosed Plaintiff with a pain disorder associated with psychological factors and a medical condition, a major depressive disorder, and an anxiety disorder. *Id.* Again, he gave Plaintiff a GAF score of 50. *Id.*

Dr. Schwartz provided a "Medical Source Statement" regarding the nature and severity of Plaintiff's manipulative limitations on May 18, 2009. (Doc. 13-8 at 102-03). He indicated Plaintiff had tenderness, pain, muscle weakness, and reduced grip strength in her forearms and wrists. *Id.* at 102. Dr. Schwartz noted Plaintiff rated the pain as a "9-10" out of 10, and had a "constant ache/ sharp throbbing pain." *Id.* According to Dr. Schwartz, Plaintiff was unable to grasp, turn or twist objects;

perform fine manipulations with her fingers; or reach with her arms.  *Id.* at 103.  In a progress report completed the same date, Dr. Schwartz explained also that Plaintiff had "ongoing and chronic pain in her neck, back, and both upper extremities."  (Doc. 13-10 at 5).

On June 3, 2009, Dr. Pong reviewed the medical record, and noted Plaintiff "was not very cooperative" at the consultative examination with her range of motion test.  (Doc. 13-8 at 110).  According to Dr. Pong, a light residual functional capacity assessment with occasional postural limitations was appropriate.  *Id.*

**B.     The ALJ's Findings**

As an initial matter, the ALJ noted Plaintiff filed applications for benefits on March 4, 2008, which were denied at the initial level on July 9, 2008.  (Doc. 13-3 at 25).  The ALJ noted the prior applications "involved the same issues and facts."  *Id.*  Further, the ALJ found Plaintiff "ha[d] not presented any new and material evidence for the period through July 9, 2008."  *Id.* at 26.  Accordingly, the ALJ declined to re-open the prior claims, and affirmed the prior denials "based on the doctrine of res judicata."  *Id.*  Therefore, the ALJ evaluated the period only after July 9, 2008.

Following to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date.  (Doc. 13-3 at 25).  Second, the ALJ found Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, cervicobrachial syndrome, lateral epicondylitis, medial epicondylitis, carpal tunnel syndrome, obesity, dysthymic disorder, and a pain disorder.  *Id.* at 26.  These impairments did not meet or medically equal a listing.  *Id.*

Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC")[4] "to perform sedentary work[5] as defined in 20 C.F.R 404.1567(a) and 416.967(a) except frequent handling and fingering bilaterally."  (Doc. 13-3 at 25).  In addition, Plaintiff was "moderately limited in [her] ability to understand, remember and carry out detailed job instructions."  *Id.*  With this RFC, Plaintiff was

---

[4] The residual functional capacity is a determination of what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545.

[5] The Regulations explain: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1467(a), 416.967.

unable to perform past relevant work. *Id.* at 30. However, the ALJ determined Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 31. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## DISCUSSION AND ANALYSIS

On January 27, 2011, Plaintiff submitted a report completed by Dr. Robert Markison to the Appeals Council for its consideration with her request for review. (Doc. 13-14 at 3). Dr. Markison performed a physical examination on May 4, 2007. *Id.* at 4. The report by Dr. Markison includes an extensive summary of treatment notes and Plaintiff's medical records, as well as his findings from tests conducted in the examination. *See id.* at 4-47.

Plaintiff contends that the ALJ relied upon an incomplete record in assessing Plaintiff's physical limitations because the ALJ did not review Dr. Markison's report. (Doc. 18 at 9). Plaintiff argues the report supports the opinion of her treating physician, Dr. Schwartz. *Id.* at 10. Therefore, Plaintiff concludes the ALJ's decision regarding her physical impairments lacks the support of substantial evidence. *Id.* at 12. Further, Plaintiff argues, "The ALJ failed to properly consider the evidence regarding [her] mental limitations." *Id.* at 13.

**A.   Applicability of the doctrine of res judicata.**

The ALJ denied benefits through July 9, 2008, based upon the doctrine of res judicata. (Doc. 13-3 at 25-26). Plaintiff argues application of res judicata was an error, because "[t]he record does not contain any evidence of a prior decision." (Doc. 18 at 14). In addition, Plaintiff contends the report of Dr. Markison "constitutes new and material substantial evidence for the period through July 9, 2008." (Doc. 21 at 5).

   1.   Administrative res judicata

Plaintiff's prior applications for benefits were denied at the initial level on July 9, 2008. (Doc. 13-7 at 20-21). When her claim was denied, Plaintiff had the right to request reconsideration within sixty days after the date she received notice of the determination. 20 C.F.R. §§ 404.907-404.908, 404.909(a)(1), 416.1407-416.1409. However, Plaintiff did not request reconsideration, and the decision that Plaintiff was not disabled became binding. 20 C.F.R. § 404.905 ("An initial

1 determination is binding unless you request a reconsideration within the stated time period ..."); 20
2 C.F.R § 1405 (same).

3 The Ninth Circuit has explained, "res judicata applies to findings and decisions on the merits
4 which become final as a result of a claimant's failure to seek administrative review after notice of an
5 adverse decision." *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985) (citing *Stuckey v. Weinberger*,
6 488 F.2d 904, 909-11 (9th Cir. 1973)). When a claimant is denied benefits under the Social Security
7 Act and files a subsequent application, the denial precludes the claimant from arguing that he was
8 disabled during the period covered by decision. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).

9 In *Taylor*, the claimant failed to request reconsideration after receiving notice of an initial
10 determination denying benefits, and the Court found "[t]he initial determination therefore became
11 binding and was considered to be the final decision of the Secretary." *Taylor*, 765 F.2d at 876 (citing
12 20 C.F.R. § 404.909). Similarly, here, the Plaintiff did not seek reconsideration of the initial decision
13 denying benefits. Accordingly, the doctrine of res judicata applied to Plaintiff's claim of disability
14 prior to July 9, 2008.

15     2. Re-opening of an adjudicated period

16 Plaintiff appears to argue the ALJ should have re-opened the period of time adjudicated by the
17 prior application. However, a decision to re-open a claim "is purely discretionary." *Taylor*, 765 F.2d
18 at 877 (citing *Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982)). Because "[d]iscretionary
19 decisions are not 'final decisions' within the meaning of section 405(g)," the Court lacks jurisdiction
20 to review the decision to not re-open the period prior to July 9, 2008. *See id.*

21 **B. Additional evidence submitted to the Appeals Council does not warrant remand.**

22 As noted above, Plaintiff submitted the report of Dr. Markison to the Appeals Council, which
23 Plaintiff argues should be considered by the Court in its review. (Doc. 18 at 9-11). Notably, the
24 Appeals Council incorporated the report into the record, but "found that this information does not
25 provide a basis for changing the Administrative Law Judge's decision or dismissal." (Doc. 13-3 at 3).

26 The Regulations provide: "In reviewing decisions based on an application for benefits, if new
27 and material evidence is submitted, the Appeals Council shall consider the additional evidence only
28 where it relates to the period on or before the date of the administrative law judge hearing decision."

20 C.F.R. §§ 404.970(b). For the Court to remand the matter based upon additional evidence provided to the Appeals Council, Plaintiff "must show that the new evidence is material and that there was good cause for the failure to incorporate the evidence into the record in the initial proceeding." *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1280 (9th Cir. 1987) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986)).

Evidence is material if it is "relevant to the claimant's condition **for the time period for which benefits were denied**." *Bergmann v. Apfel*, 207 F.3d 1065, 1069-70 (8th Cir. 2000) (emphasis added); *see also Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985) (the materiality requirement is satisfied if the evidence bears "directly and substantially on the matter"). Therefore, to be material evidence, the report must relate to Plaintiff's condition after July 9, 2008—the period under review by the ALJ. *See id.* Dr. Markison discusses only Plaintiff's medical history and her condition at the examination on May 4, 2007. Accordingly, the report of Dr. Markison is not material to Plaintiff's claim that is now before the Court for review.

Moreover, Plaintiff has not demonstrated good cause exists for her failure to provide this report to the ALJ at the administrative level. Indeed, Plaintiff has not provided *any* reason for the failure to provide this evidence prior to her request for review by the Appeals Council. Accordingly, remand is not warranted for consideration of the report of Dr. Markison.

**C. The ALJ set forth specific, legitimate reasons supported by substantial evidence in the record for giving less weight to the opinion of Dr. Schwartz.**

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the courts apply a hierarchy to the weight afforded to the opinions offered by physicians.

11

The opinion of a treating physician may be rejected whether it is contradicted by another. *Magallanes*, 881 F.2d at 751. An ALJ may reject the contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

1. Reasons set forth by the ALJ for giving less weight to the opinion of Dr. Schwartz

Plaintiff asserts the ALJ erred in evaluating the medical evidence and "erroneously rejected Dr. Schwartz's opinion for lack of evidence. . ." (Doc. 18 at 11). On the other hand, Defendant argues the ALJ identified proper reasons for giving less weight to the opinion, which "remain valid whether Dr. Markison's report is considered or not." (Doc. 20 at 10).

The ALJ explained she gave less weight to the opinion of Dr. Schwartz because he treated Plaintiff "with limited and conservative treatment," and did not support his opinion "with medical signs and laboratory findings." (Doc. 13-3 at 30). The Ninth Circuit has determined that these are specific, legitimate reasons for giving less weight to the opinion of a treating physician.

a. *Conservative treatment*

An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In *Rollins*, the Ninth Circuit noted the treating physician claimed the plaintiff was disabled, yet "prescribed a conservative course of treatment." *Id.* at 867. The ALJ noted the treating physician's recommendations were not supported by findings and were "not the sort of . . . recommendations one would expect to accompany a finding that Rollins was totally disabled under the Act." *Id.* Likewise, here the ALJ found Dr. Schwartz's treatment was "inconsistent with the medical response that would be expected if the symptoms and limitations were as severe as described by the treating physician."

(Doc. 13-3 at 30). Accordingly, this was a specific, legitimate reason for giving less weight to the opinion of Dr. Schwartz.

### b. Lack of supporting medical signs and laboratory findings

The Commissioner has determined that the opinion of a physician is not entitled to controlling weight when the "opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 SSR LEXIS 9, at *9. Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations. *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Consequently, the Ninth Circuit determined the opinion of a treating physician may be rejected when it is "conclusory and brief" and lacks support of clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996) ("The ALJ permissibly rejected… reports that did not contain any explanation of the bases of their conclusion").

Here, the ALJ found the opinion of Dr. Schwartz lacked the support of medical signs and laboratory findings. (Doc. 13-3 at 30). Indeed, review of the opinion dated December 15, 2008 reveals Dr. Schwartz based his conclusion on Plaintiff's reports of pain, and did not reference any tests he may have performed. (*See* Doc. 13-8 at 23-26). Likewise, Dr. Schwartz did not offer clinical findings supporting his conclusions concerning the severity of Plaintiff's manipulative limitations in the form completed on May 18, 2009. (*See id.* at 102-03). Accordingly, this was a specific, legitimate reason for giving less weight to the opinion of Dr. Schwartz.

### 2. Substantial evidence supports the ALJ's evaluation

Plaintiff contends the ALJ's opinion lacks the support of substantial evidence because Dr. Markison's opinion was not reviewed by the ALJ. (Doc. 18 at 10-11). However, the ALJ's opinion remains supported by the opinions of the consultative examiners and non-examining physicians, Drs. Duclair, Siekerkotte, and Ginsburg. The Commissioner explained the term "substantial evidence"

"describes a quality of evidence . . . intended to indicate that the evidence that is inconsistent with the opinion *need not* prove by a preponderance that the opinion is wrong." 1996 SSR 4 LEXIS 9 at *8. Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Significantly, the opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As noted by the ALJ, the opinions of consultative examiners Drs. Duclair and Siekerkotte are supported by clinical findings. (Doc. 13-3 at 30). For example, Dr. Duclair tested Plaintiff's range of motion, motor strength, and grip strength. (Doc. 13-8 at 4). Based upon this examination, Dr. Duclair opined Plaintiff did not have manipulative limitations. *Id.* at 4. Likewise, Dr. Siekerkotte tested Plaintiff's motor strength and found it was "good, 4/5 bilaterally." (Doc. 13-8 at 21). Accordingly, she determined Plaintiff should be able to perform reaching, handling, fingering, and feeling on a frequent basis "as long as no heavy lifting is involved." *Id.* Because Drs. Duclair and Siekerkotte based their opinions upon independent clinical tests, the findings constitute substantial evidence.

Further, the opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995); *Tonapetyan*, 242 F.3d at 1149 ("[a]lthough the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record"). Similar to Drs. Duclair and Siekerkotte, Dr. Ginsburg found Plaintiff had the ability to perform frequent handling (gross manipulation) and fingering (fine manipulation). (Doc. 13-8 at 29). Because the opinion of Dr. Ginsburg was consistent with the opinions of Drs. Duclair and Siekerkotte, it is substantial evidence in support of the RFC determined by the ALJ.

**D.     The ALJ did not err in finding Plaintiff had the ability to perform unskilled work.**

Plaintiff contends the ALJ understated her mental limitations when determining Plaintiff was capable of unskilled work. (Doc. 13-3 at 26, 31). According to Plaintiff, "The word 'moderate' is not

defined in terms of quantitative or qualitative function," and as a result the ALJ failed to set forth a proper residual functional capacity assessment. (Doc. 18 at 12-13). In addition, Plaintiff contends the ALJ failed to adopt the findings of Dr. Middleton that Plaintiff had the ability to "understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions." *Id.* at 13.

The ALJ noted she gave weight to the opinions of Dr. Castillo and Dr. Middleton when determining Plaintiff's mental RFC. (Doc. 13-3 at 30). Dr. Castillo opined Plaintiff did not have limitations with understanding instructions or completing simple tasks, but had "moderate" limitations with completing detailed or complex tasks. (Doc. 13-8 at 43). Likewise, Dr. Middleton opined Plaintiff was "not significantly limited" in her ability to understand, remember, and carry out short and simple instructions, but was "moderately limited" in the ability to understand, remember, and carry out detailed instructions." *Id.* at 56.

Plaintiff asserts Dr. Middleton expressly *limited* her to "simple work involving 1-2 steps," and that this limitation was rejected by the ALJ. (Doc. 18 at 13). However, Dr. Middleton's opinion was not set forth as a limitation but, instead, was as an expression of Plaintiff's ability. (*See* Doc. 13-8 at 58). This Court has affirmed that the ability to carry out one- and two-step instructions is encompassed by an RFC limiting the claimant to "simple, routine work," explaining:

> The ALJ was entitled to interpret [the doctor's] findings to formulate his RFC, and he was not required to adopt the exact language used by [the doctor]. This is so because [the doctor's] finding regarding tasks with one-to two-step instructions was not phrased as a limitation, but rather an affirmative statement of what Plaintiff could do. …Here, the ALJ's RFC for simple, routine work was a rational interpretation of [the doctor's] findings, and thus it must be upheld.

*Salas v. Astrue*, 2011 U.S. Dist. LEXIS 69620 at *21 (E.D. Cal. June 29, 2011); *compare also Navarro v. Astrue*, 2010 U.S. Dist. LEXIS 133685 (C.D. Cal. Dec. 16, 2010) (the physician *limited* the claimant to one- and two step tasks, and the RFC for "simple work" did not encompass the limitation) *with Wilson v. Astrue*, 2010 U.S. Dist. LEXIS 105658 (C.D. Cal. Oct. 1, 2010) (the physician opined the claimant had the ability to follow one and two-step instructions, which was not an actual limitation to only one and two-step instructions, and therefore consistent with an RFC limiting the claimant to "simple, repetitive tasks"). Here, ALJ gave weight to the opinions of Drs. Castillo and Middleton

when concluding Plaintiff was capable of unskilled work (Doc. 13-3 at 30) and her interpretation of their opinions was consistent with the physicians' opinions.

Moreover, the ALJ's restriction in her RFC to unskilled work, encompasses moderate mental limitations. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 953, 955 (9th Cir. 2002) (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" and a "marked limitation in her ability to maintain concentration over extended periods" could perform unskilled work); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009) (holding the ALJ did not err in finding that a claimant with moderate limitations, including in the ability to carry out detailed instructions and maintain attention and concentration for extended periods, was not disabled); *Sabin v. Astrue*, 337 Fed. App'x. 617, 621 (9th Cir. 2009) ("the ALJ determined the end result of the plaintiff's moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks"); *Ceballos v. Astrue*, 2011 U.S. Dist. LEXIS 97107 at *25-26 (E.D. Cal. Aug. 30, 2011) (opinion of physician that the claimant suffered moderate limitations in ability to understand, remember, and carry out detailed instructions was substantial evidence supporting the conclusion that the plaintiff should be limited to performing "simple routine, repetitive work"). Accordingly, because the ALJ found Plaintiff was capable of unskilled work (Doc. 13-3 at 31), the assessments of Drs. Castillo and Middleton regarding Plaintiff's "moderate" limitations were incorporated into the RFC.

**CONCLUSION AND ORDER**

For the foregoing reasons, the ALJ applied the proper legal standards, and her determination of the evidence must be upheld. The report of Dr. Markison presented to the Appeals Council does not warrant remand, and substantial evidence in the record supports the RFC set forth by the ALJ, as well as the decision to give less weight to Plaintiff's treating physician. Thus, the ALJ's conclusion that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

///

///

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Ana Valencia.

IT IS SO ORDERED.

Dated:   **December 19, 2012**         **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE